531 P.2d 1222

**SENTRY INSURANCE COMPANY and Lewis Brake & Clutch, Inc., Plaintiffs-Appellants,**

v.

**Johnny L. GALLEGOS and R. F. Apodaca, Superintendent of Insurance of the State of New Mexico, Defendants-Appellees.**

No. 1555.

Court of Appeals of New Mexico.

Jan. 8, 1975.

Certiorari Denied Feb. 11, 1975.

Eugene E. Klecan, Klecan & Roach, P. A., Albuquerque, for plaintiffs-appellants.

John N. Patterson, Fred M. Standley, Standley, Witt & Quinn, Santa Fe, for defendant-appellee Apodaca.

Stanley P. Zuris, Albuquerque, for defendant-appellee Gallegos.

## OPINION

LOPEZ, Judge.

This appeal involves a case which was filed in district court of Bernalillo County by Louis Brake and Clutch Co. Inc., as employer, and its insurer Sentry Ins. Co. against Johnny L. Gallegos, employee, and R. F. Apodaca, Superintendent of Insurance of the State of New Mexico. The complaint prayed for reimbursement of workmen compensation payments made by the insurance company to the employee and for a declaration of the liability of the State Subsequent Injury Fund for future payments.

The defendant-employee counterclaimed against the plaintiffs for total permanent disability pursuant to the Workmen's Compensation Act [§§ 59–10–1 to 59–10–37, N. M.S.A. 1953 (Repl.Vol. 9, pt. 1, Supp. 1973)]. The defendant, R. F. Apodaca, Superintendent of Insurance, prayed that the cause of action be dismissed as to the New Mexico Subsequent Injury Fund.

The trial court decreed in its judgment that the complaint by the plaintiffs against R. F. Apodaca, as Superintendent, be dis- missed, and awarded the employee, Gallegos, 75% permanent disability under the Workmen's Compensation Act, plus attorneys fees to the employee's attorney and to the attorneys for Apodaca. From this judgment, the plaintiffs appeal. We affirm.

The plaintiffs have six points for reversal: (1) because of the ruling of the trial court that the plaintiffs had no standing, the court lost jurisdiction of the case; (2) counterclaims are not allowed in cases involving the Subsequent Injury Fund; (3) the trial court erred in disregarding the public policy of the state; (4) there was not competent evidence to support the trial court's conclusion that the Subsequent Injury Fund was not liable; (5) the scope of review in a Subsequent Injury Fund case should be enlarged because of the strong public policy of the state; (6) the decision on the merits was not a fair and impartial one.

For our decision in this case, we shall group the six points for reversal by the plaintiffs into two issues: (1) whether the employee had a right to counterclaim for total and permanent disability and (2) whether the conclusions of the court against the plaintiffs in their complaint were supported by substantial evidence.

The employee has had a long history of back trouble at the L5–S1 level which goes back to 1960. In September, 1960, the employee was lifting a heavy box and sustained a sharp pain in his low back. He consulted Dr. Parnall, and on November 22, 1960, Dr. Parnall performed a spinal fusion of the fourth and fifth lumbar and the sacrum. Dr. Parnall testified that because of persistent troubles and complaints in August of 1961, he made a new incision and found that the fusion was very solid. He felt at that time no further surgery should be done.

Dr. Coffey, as a result of an examination in 1962, was convinced that the employee had somehow produced a slipped disc, known as a herniated nucleus pulposus or a pinched nerve, under the level of the

solid spinal fusion. Dr. Gay agreed with this impression, performed a myelogram, and subsequently operated on the employee on March 22, 1962. He explored the L5–L4 intervertebral disc, found no slipped disc at the L–5 interspace, but did find one at the L–4 interspace. Dr. Coffey said that he and Dr. Gay removed it at surgery. When Gallegos started working for the plaintiff employer, he filed with the proper authorities a certificate which essentially said three things:

"I. L.S. instability secondary to disc derangement L45 L5–S1, old.

II. Fusion surgical incomplete, old, L45 L5–S1 with motion on stress.

III. Lumbar strain acute symptomatic recent, superimposed on above, subsided.

The present chronic back condition represents *impairment* in the 30% range." [Emphasis added]

The employee, after having the certificate signed and filed in accordance with the Workmen's Compensation Act, continued to work with the employer until March 7, 1970, at which time he sustained an injury. He was pushing barrels weighing up to 400 pounds and sustained low back pain. The employee was seen by Dr. Coffey sometime in May of 1970, and his diagnosis at that time was that Gallegos had a chronic muscle and ligament strain of his low back.

Dr. Coffey operated on defendant's low back again on July 24, 1970 for exploratory purposes to see if there was a breakdown of the prior spinal fusion. He found absolutely no evidence of any breakdown. He removed two screws placed in defendant's back in a prior operation because there was a solid spinal fusion and the screws no longer served a purpose.

Dr. Coffey testified that in his opinion Mr. Gallegos was 100% disabled for work as a result of the 1970 injury. He also testified that there was no relation between the 1970 accident and injury and the previous injuries and fusions, that his disability as a result of the 1970 injury was permanent, and that he had no physical impairment prior to this injury (as opposed to the certificate of pre-existing physical impairment).

■ (1) The plaintiffs contend that the court had jurisdiction only to adjudicate their complaint. They further state that, when the court dismissed the plaintiffs' complaint, it lost jurisdiction of the counterclaim filed by the defendant-employee. Plaintiffs contend that the Workmen's Compensation Act does not specifically allow counterclaims to be filed. However, the rules of civil procedure apply to Workmen's Compensation cases. Section 59–10–13.9, N.M.S.A.1953 (Repl. Vol. 9, pt. 1) provides that the rules of civil procedure apply to workmen compensation cases unless there is a conflict between the provisions of the act and these rules. Counterclaims are allowed by the rules of civil procedure, § 21–1–1(13), N.M.S.A.1953 (Repl.Vol. 4). We hold that since counterclaims such as the one filed by the defendant-employee are allowed by the rules of civil procedure and are not prohibited by the Workmen's Compensation Act, the court had jurisdiction over the employee's counterclaim. Section 59–10–13.9, supra.

■ Plaintiffs assert their complaint was dismissed on jurisdictional grounds and therefore the trial court should also have dismissed the counterclaim. See § 21–1–1(13)(i), N.M.S.A.1953 (Repl.Vol. 4). Our rule is similar to Federal Rule of Civil Procedure 13(i). Generally, the federal rule has been interpreted to allow the court to consider counterclaims when disposition of the original claim does not affect federal jurisdiction. See Emerson Radio & Phonograph Corp. v. Hendrix, 20 F.R.D. 572 (1957); Scott v. United States, 354 F.2d 292, 173 Ct.Cl. 650 (1965); 6 Wright & Miller, Federal Practice & Procedure: Civil, § 1437 (1971). We see no reason why New Mexico should adopt a different rule.

■ In the present case, the complaint was dismissed after a full hearing on all the issues. The dismissal was on alternate

grounds: (1) lack of standing by plaintiffs; and (2) on the facts. There having been a full hearing and a determination of the factual issues, there is no reason to hold the trial court lost jurisdiction of the counterclaim by its alternative ruling on standing.

(2) Concerning the applicability of the Subsequent Injury Fund, Ballard v. Southwest Potash Corp., 80 N.M. 10, 450 P.2d 448 (Ct.App.1969) states:

"Assuming a certificate of pre-existing impairment and assuming that procedural requirements are met, applicability depends on four things.

(a) A pre-existing permanent physical impairment.

(b) A subsequent disability compensable under our Workmen's Compensation Act.

(c) The subsequent disability must be permanent and

(d) The subsequent disability must be ' * * * materially and substantially greater than that which would have resulted from the subsequent injury alone * * *'."

Conditions (b) and (c) were met. Our concern is with Conditions (a) and (d).

■ The testimony of Dr. Parnall, Dr. Miller, and Dr. Coffey was conflicting to a certain extent. Accordingly, we have conflicting medical testimony and it was up to the trier of fact to weigh the evidence. Ballard v. Southwest Potash Corp., supra; Mares v. City of Clovis, 79 N.M. 759, 449 P.2d 667 (Ct.App.1968). Such is not the duty of this appeals court. Our duty is to find out if the conclusions of the court are supported by substantial evidence. Tafoya v. Kermac Nuclear Fuels, Corp., 71 N.M. 157, 376 P.2d 576 (1962).

The plaintiffs contend that since the employee filed a certificate of pre-existing impairment, under § 59–10–133, N.M.S.A. 1953 (Repl.Vol. 9, pt. 1, Supp.1973), the court should have found that the employee had a 30% disability as a result of prior injuries to the employee's back, and that this percent of disability should be deducted from any disability that resulted from the 1970 injury.

■ The plaintiffs did not require that a certificate of pre-existing disability be filed under § 59–10–37, N.M.S.A.1953 (Repl.Vol. 9, pt. 1). Under § 59–10–136(F), N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1973), the question of apportioned liability between the Subsequent Injury Fund and the insurer and/or employer became a question for the court to determine. See Sections 59–10–130 and 59–10–131, N. M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1973).

■ The trial court found that Gallegos had a 75% permanent partial disability as a direct result of the injury of March 7, 1970 "and of that injury alone." This finding is supported by substantial evidence. This finding supports the conclusion that the injury of March 7, 1970 "did not result in disability which is substantially and materially greater than that which would have resulted from said injury had no prior injury taken place." Conditions (a) and (d) were not met. The Subsequent Injury Fund is not liable for any of Gallegos' disability in this case.

The judgment of the trial court is hereby affirmed.

Gallegos is awarded $750.00 for the services of his attorney on appeal. The attorneys for the Superintendent of Insurance incurred costs of $23.50 in this appeal and their fee in the appeal is set at $1,250.00. Payment of $1,273.50 to the Superintendent's attorneys is authorized from the Subsequent Injury Fund.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.