650 P.2d 3

Tommy **VAUGHN**, Plaintiff-Appellee

v.

UNITED NUCLEAR CORPORATION, and The Travelers Insurance Co., Defendants-Appellees

and

Vicente B. Jasso, State Superintendent of Insurance, and The New Mexico Subsequent Injury Fund, Defendants-Appellants.

No. 5260.

Court of Appeals of New Mexico.

May 6, 1982.

Certiorari Quashed Aug. 31, 1982.

Michael Vigil, Albuquerque, for defendants-appellants.

Richard T. Mosher, Jr., John R. Tiwald, Albuquerque, for plaintiff-appellee.

Gregory W. Chase, Alice Tomlinsen-Lorenz, Albuquerque, for defendants-appellees.

OPINION

DONNELLY, Judge.

The State Superintendent of Insurance, Vicente Jasso, on behalf of the Subsequent Injury Fund, (Fund) appeals a judgment of the trial court that adjudicated the Fund liable for 50% of a workman's compensation award. The court found plaintiff totally and permanently disabled and ordered the Fund to pay one-half of the total benefits, costs, medical expenses, rehabilitation services and attorney's fees.[1] We affirm, except as to the portion of the award that ordered payment from the Fund for the first eight weeks of disability.

We are called upon to determine the procedural and statutory requirements of a claim against the Subsequent Injury Fund for partial payment of an award to a handicapped workman who suffers a second work-related disability. The superintendent asserts three claims of error: (1) whether a claim against the Second Injury Fund may be asserted if a certificate of pre-existing physical impairment is not executed or filed prior to the occurrence of a subsequent injury; (2) whether the evidence supports the court's determination that the Second Injury Fund is liable for part of plaintiff's injury; and (3) whether the court correctly concluded that the Second Injury Fund is liable for the payment of one-half of the first eight weeks of disability, and for a proportionate share of medical expenses, costs, rehabilitation expenses, and attorney's fees.

Plaintiff was an employee of United Nuclear Corporation (UNC) at it's St. Anthony mine near Grants, New Mexico. On March 30, 1978, he suffered an injury to his lower back while working as an underground miner. As a result of the injury, plaintiff underwent a laminectomy to relieve problems from a ruptured disc. Plaintiff settled his claim with UNC on the basis of a 10% permanent disability, and in early September, 1978, he returned to work with the same employer as an ore prober.

Due to continued discomfort in performing work as a prober, plaintiff requested reassignment. The employer agreed and shifted plaintiff to driving a truck until November 2, 1978 when he was again ordered to work as a prober. While performing his duties, plaintiff twisted and fell, wrenching his back. Plaintiff was again hospitalized. Following release from the hospital, plaintiff was diagnosed as suffering from chronic low-back strain syndrome with psychogenic components.

Plaintiff filed suit against UNC and Traveler's Insurance Company, (appellees) on December 20, 1978, seeking compensation benefits as a result of the November injury. After plaintiff's case had been pending for more than a year, plaintiff filed a first amended complaint, joining the Fund as a party defendant. The Fund moved to dismiss the amended complaint on grounds that plaintiff had failed to allege compliance with § 52-2-6, N.M.S.A.1978, which requires the filing of a certificate of pre-existing physical impairment with the Superintendent of Insurance. In fact, defendant, UNC although aware of plaintiff's initial injury in March, 1978, had authorized plaintiff to return to work and did not require plaintiff to execute the certificate. The trial court denied the motion to dismiss and granted plaintiff leave to file a Second Amended Complaint with the certificate attached to it.

Plaintiff filed a Second Amended Complaint, incorporating a certificate executed on November 10, 1980. Following trial, the court made findings of fact, conclusions of law, and entered final judgment in favor of plaintiff. It determined that plaintiff's accident on November 2, 1978, aggravated his

---

1. By stipulation, the State Superintendent of Insurance has been substituted as a party to this action pursuant to § 52-2-5(C), N.M.S.A. 1978, on behalf of the Second Injury Fund.

484

prior back injury of March 30, 1978, which together produced a psychological condition totally and permanently disabling him. The court ordered defendant UNC and the Fund each to pay 50% of all compensation benefits to which plaintiff was entitled, including medical expenses, vocational rehabilitation services, attorney's fees and costs. This appeal concerns only the court's apportionment of liability between the Fund and UNC.

1) *Timeliness of Filing*

The Fund first contends that failure of plaintiff and UNC to timely file a certificate with the superintendent's office prior to occurrence of the second injury precludes any recovery against the Fund.

The statutory provisions which govern the execution and filing of certificates are set out in §§ 52–2–5 and 52–2–6, N.M.S.A. 1978. Section 52–2–5(C) provides in applicable part:

C. * * * In cases of persons who have begun a new employment after January 1, 1962, no judgment authorizing disbursement from said fund shall be entered unless the person claiming permanent physical impairment *has given written notice* to the employer of the nature and extent of such prior physical impairment *prior to beginning his employment by his execution of the certificate* required by Section 8 of the Subsequent Injury Act. [Emphasis supplied.]

Section 52–2–6, N.M.S.A.1978, provides:

A. *Any worker may at any time file,* and any employer may require a workman, *as a condition of employment or continued employment, to file with the superintendent of insurance, a certificate of preexisting physical impairment.*

B. Said certificate shall set forth the nature of the impairment, expressed both as a description of the impairment, and as a percentage of disability as defined in the Workmen's Compensation Act; it shall be signed and acknowledged by the workman and a physician duly licensed to practice medicine in the State of New Mexico. The certificate shall state

whether the preexisting impairment was caused by accidental injury.

C. In the event any workman suffers compensable injury as defined by the Workmen's Compensation Act, said certificate shall have the effect of limiting the employer's liability under the Workmen's Compensation Act to that disability attributable to the current injury.

D. In the event the certificate of preexisting physical impairment certifies that the impairment was the result of an accidental injury, the Subsequent Injury Act shall be applicable to any disability arising out of accident or occurrence *taking place after the date a certificate is executed.* [Emphasis supplied.]

Interpretation of filing requirements of the Subsequent Injury Act is a matter of first impression. Appellant argues that Subsection D of § 52–2–6, *supra,* states that it applies only to disability arising *after execution* of a certificate. Therefore, execution of a certificate prior to a subsequent injury is mandatory. Since the certificate in this case was executed and filed after the occurrence of the disability and after the filing of plaintiff's suit, the Fund claims that the employer's failure to timely file exonerates the Fund under the act.

On the other hand, appellees draw an analogy between the Subsequent Injury Act and § 52–1–41, N.M.S.A.1978, of the Workmen's Compensation Act. It requires the filing of proof that the employer has met the Act's insurance requirements within 30 days of the establishment of an employment relationship. Under the Workmen's Compensation Act, failure to file indicia of insurance renders an employer subject to common law tort actions, but the courts have held that substantial compliance is sufficient. *See, e.g., Baldwin v. Worley Mills, Inc.,* 95 N.M. 398, 622 P.2d 706 (Ct.App.1980), *cert. quashed,* 95 N.M. 426, 622 P.2d 1046 (1981); *Mirabal v. International Minerals & Chemical Corp.,* 77 N.M. 576, 425 P.2d 740 (1967). UNC contends that the same principle should apply to the execution and filing requirements for certificates under the Subsequent Injury Act,

since the purpose of requiring certificates is to give notice.

UNC also urges that the language of § 52–2–6, *supra*, is ambiguous. It necessitates resort to statutory construction and interpretation to glean the true legislative intent of the Act's provisions relative to certificates.

We agree that the filing provisions of the statute are ambiguous.

Section 52–2–5(C), *supra*, states that for a judgment mandating Fund disbursement to be entered, the employee must give "written notice" to the employer of the pre-existing impairment before beginning work by "execution of the certificate required by Section 8" of the Act. There is no Section 8 of the current Act. The current § 52–2–6(A), *supra*, permits *filing* "at any time." Section 52–2–6(D) states that if a certificate certifies that the prior impairment was due to an accident, the Act applies to injuries occurring after the certificate is *executed*. From this conflicting and partially obsolete language alone, we cannot determine whether time specification of the Act's filing provisions are mandatory or merely directory.

■■■ Where ambiguity appears in statutory language, giving rise to several different interpretations, the court must resort to construction and interpretation thereof to ascertain legislative intent. *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1981). To do so, courts are not limited to consideration of isolated parts of an act, but are required to construe all parts thereof in *pari materia*, and must look to the legislative history of the enactment, its purposes, and its effect under the various constructions suggested. *See New Mexico State Board of Education v. Board of Education of Alamogordo Public School District No. 1*, 95 N.M. 588, 624 P.2d 530 (1981); *Methola v. County of Eddy, supra.*

■■■ Careful analysis of the Subsequent Injury Act supports the trial court's determination that substantial compliance with its filing requirements is sufficient. Sub-

stantial compliance means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted and accomplishes the reasonable objectives of the statute. *See Security Trust v. Smith*, 93 N.M. 35, 596 P.2d 248 (1979); *Application of Santore*, 28 Wash.App. 319, 623 P.2d 702 (1981); *U. S. Pipe and Foundry Co. v. Caraway*, 546 S.W.2d 215 (Tenn. 1977).

The legislative history of subsequent injury legislation in New Mexico is revealing. As noted by Justice Moise in *Reynolds v. Ruidoso Racing Association, Inc.*, 69 N.M. 248, 365 P.2d 671 (1961), "Although 44 states have second injury funds as means of answering the dilemma presented by dissatisfaction with rules of full responsibility and the rule of apportionment of workmen's compensation liability [against employers], New Mexico is one of the six that has never established such a fund."

In 1959, the legislature enacted an extensive revision of the State Workmen's Compensation Laws. It included a provision designed to limit the liability of employers who hired a previously disabled employee.[2]

To limit the extent of an employer's liability, the 1959 statute provided that an "employer may require a prospective employee as a condition of continued employment, to certify the existence, the nature and the extent of any pre-existing disability." It specified that a certificate of pre-existing disability must set forth the degree and type of disability of the workman, and at least one licensed physician. The certificate was required to be recorded in the county where the employment was initiated or the employee worked. The act then limited the employer's liability for disability due to the subsequent injury, but made no provision for disability due to the pre-existing impairment.

Thereafter, in 1961, the legislature enacted the Subsequent Injury Act and created the Subsequent Injury Fund to provide for apportionment of subsequent disability at-

2. Laws 1959, ch. 67, § 30 (formerly § 59–10– 37, N.M.S.A.1953 (2d Repl.Vol. 9).

tributable to pre-existing impairment. Laws 1961, ch. 134, § 1, *et seq.*, formerly at § 59–10–127 *et seq.*, N.M.S.A.1953 (2d Repl. Vol. 9). Section 8 of the Act, codified as § 59–10–133, N.M.S.A.1953 (2d Repl.Vol. 9), substantially revised the 1959 requirements for executing and filing certificates of pre-existing physical impairment. The new statute (Laws 1961, ch. 134, § 8) provided that, "After January 1, 1962, the Subsequent Injury Act shall be applicable only in those cases where there has been filed with the Superintendent of Insurance *prior to the injury or occurrence* causing the subsequent disability, a certificate of existing physical impairment * * *." (Emphasis added.) This same statute further provided that the "employer or his insurance carrier shall pay the Superintendent of Insurance a filing fee of two dollars ($2.00) for each certificate filed."

The Subsequent Injury Act requirements for executing and filing certificates were again amended in 1975.[3] The 1975 amendment, now codified as § 52–2–6, N.M.S.A. 1978, deleted the provision in Section 8 of the 1961 statute that required certificates to be filed with the superintendent "prior to the injury or occurrence causing the subsequent disability," and substituted new language, stating that a worker "*may at any time* file, * * * with the superintendent of insurance, a certificate of pre-existing physical impairment." (Emphasis supplied.)

The 1975 amendment creating § 52–2–6, *supra*, failed to amend the provisions of § 52–2–5(C), *supra*, which provides in part that no disbursements can be made unless the employee has given written notice to his employer, "of prior physical impairment prior to beginning his employment *by his execution of the certificates required by Section 8 of the Subsequent Injury Act.*" (Emphasis supplied.)

The above quoted provision, § 52–2–5(C), was repealed by implication by Laws 1975, ch. 298, since Section 8 of the Subsequent Injury Act was expressly repealed by Laws 1975, ch. 298, § 3. In *Stokes v. New Mexico State Board of Education*, 55 N.M. 213,

230 P.2d 243 (1951), quoting *Ellis v. New Mexico Construction Co.*, 27 N.M. 312, 201 P. 487 (1921), the court followed the rule that:

> A statute is repealed by implication, though such repeal is not favored, where the legislative intent is manifest that the latter statute should supersede the former, and such intent is manifest where the Legislature enacts a new and comprehensive body of law which is so inconsistent with and repugnant to the former law on the same subject as to be irreconcilable with it, and especially does this result follow where the latter act expressly notices the former in such a way as to indicate an intention to abrogate.

*See also Galvan v. City of Albuquerque*, 87 N.M. 235, 531 P.2d 1208 (1975); *cf. Varela v. Mounho*, 92 N.M. 147, 584 P.2d 194 (Ct. App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978).

▮▮ Where an amendment is inserted without regard to the remaining portions of an act, the clear intent of the amendatory clauses prevails over any contradictory provisions because it is a later declaration of legislative intent and the legislature in adopting an amendment, can be presumed to change the existing law. *See Martinez v. Research Park, Inc.*, 75 N.M. 672, 410 P.2d 200 (1965). Moreover, an amendment substituting "may" for "shall" manifests a clear intent to make the act referred to permissive instead of mandatory. *Champ v. Brown*, 197 Minn. 49, 266 N.W. 94 (1936). In the instant case, § 52–2–5(C) requires execution of a certificate according to the mandatory terms of Section 8, former § 59–10–133, *supra*. By repealing the mandatory filing requirements of Section 8, and replacing them with the permissive filing provisions of § 52–2–6(A), *supra*, the legislature clearly expressed an intention to abrogate the mandatory filing provisions of § 52–2–5(C), as they conflict with the later enactment.

▮ The Subsequent Injury Act is remedial in character, and should not be inter-

---

**3.** Laws 1975, ch. 298, § 2.

preted in a narrow or technical manner, but should be construed in light of the beneficent purposes of the enactment. Like the Workmen's Compensation Act, which the Subsequent Injury Act is designed to supplement, its provisions should be construed liberally to give effect to its stated purposes and announced legislative intent. *See Malone v. Swift Fresh Meats Co.,* 91 N.M. 359, 574 P.2d 283 (1978).

The legislative purpose of the Subsequent Injury Act is expressed in § 52–2–2, N.M.S. A.1978. The statute is declaratory of an intention to encourage the employment and retention of handicapped workers by employers. The purpose of filing a certificate is to encourage employers to hire handicapped employees, or to retain workmen who have suffered disabling job-related injuries. The certificate has the effect of limiting the liability of an employer that hires or retains a handicapped employee and who subsequently suffers another disabling injury. The objective of the certificate requirement is not to require registration of a handicapped employee, but to provide notice to an employer of any pre-existing disability of an employee and to document the nature and extent of such disability. *See Baum v. Greyhound Corp.,* 3 Kan. App.2d 456, 601 P.2d 6 (1979), (Spencer, J. dissenting).

The language of § 52–2–6(A), *supra,* in light of previous legislative history evinces a legislative intent to allow certificates to be filed after the occurrence of the second injury.

The language contained in § 52–2–6(D), *supra,* states that "the Subsequent Injury Act shall be applicable to any disability arising out of accident or occurrence *taking place after the date a certificate is executed.*" This was not intended to foreclose impleading the Superintendent of Insurance on behalf of the Second Injury Fund where a certificate is executed and filed after a workman incurs a subsequent injury and where the employer had actual knowledge of the employee's prior disability.

Appellant relies upon *Ballard v. Southwest Potash Corp.,* 80 N.M. 10, 450 P.2d 448 (Ct.App.1969), for the proposition that a certificate of pre-existing physical impairment must be filed and executed prior to a workman incurring a subsequent injury. However, as discussed previously, following the decision in *Ballard, supra,* the 1975 amendment materially changed filing requirements relating to such certificates.

It is undisputed that UNC knew of plaintiff's initial partial disability after he sustained his March 31, 1978, back injury. To construe § 52–2–6, *supra,* in the manner contended by appellant would elevate form over substance and defeat the remedial objectives of the Subsequent Injury Act.

Although it would appear to be beneficial to include in the Subsequent Injury Act a requirement similar to the provisions of § 52–1–29, N.M.S.A.1978, which would require timely notice to the Superintendent of Insurance following the occurrence of a subsequent injury to allow the fund to investigate the facts surrounding the accident while they are readily accessible, no such express provision is presently contained in the Subsequent Injury Act. *See Clark v. Duval Corp.,* 82 N.M. 720, 487 P.2d 148 (Ct.App.1971).

Appellant further argues that appellees did not substantially comply with the Act because the description of plaintiff's disability on the certificate, eventually filed, did not in fact reflect his disability as defined in the Workmen's Compensation Act, as required by § 52–2–6(B),·*supra.* The physician who completed the certificate testified that the percentage of "disability" meant a percentage of physical impairment. Physical impairment and disability are distinct concepts in the law: impairment is a physical defect, whereas, disability relates to the capacity to perform work. *Perez v. International Minerals & Chemical Corp.,* 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981). Nevertheless, determination of degree of disability under the Workmen's Compensation.Act is generally a matter for the trial court. *Marez v. Kerr McGee,* 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978), *cert. denied,* 92 N.M. 532, 591 P.2d 286 (1979). This is also true under the Subsequent Injury Act,

where an employer has not required an employee to execute a certificate. *Sentry Insurance Co. v. Gallegos*, 87 N.M. 249, 531 P.2d 1222 (Ct.App.), *cert. denied*, 87 N.M. 239, 531 P.2d 1212 (1975). Moreover, the courts have observed that the distinction between physical impairment and disability as required under the Workmen's Compensation Act is confusing and troublesome. *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980); *Perez v. International Minerals Chemical Corp.*, *supra*. It would be unreasonable to require that such a distinction be strictly reflected in certificates of pre-existing impairment under the Subsequent Injury Act.

■ We conclude that plaintiff substantially complied with the requirements of the Subsequent Injury Act.

### 2) *Substantial Evidence to Substantive Requirements*

Appellant's second claim asserts that the evidence did not support the findings and conclusions of the trial court. It argued that the evidence was insufficient to show that the resulting disability was "materially and substantially greater than that which would have resulted from the subsequent injury alone," as required by § 52–2–9(A), N.M.S.A.1978. The Fund challenged the court's findings of fact nos. 21, 22, 23, 25, 26 and 27, and conclusions of law 5 and 8.

The challenged findings were as follows:

21. That the accident of November 2, 1978, aggravated the back injury of March 30, 1978, and produced a new physical injury at the L3–L4 and L4–L5 levels.

22. Both the accidents of November 2, 1978, and March 30, 1978, resulted in a psychological condition to plaintiff in which he is totally and permanently disabled within the meaning and terms of the Workmen's Compensation Act.

23. That the emotional and psychological problems for which Dr. Caplan and Dr. Dempsey, a psychiatrist, treated the plaintiff were causally related to both the accidents of March 30, 1978, and November 2, 1978.

\* \* \* \* \* \*

25. That the plaintiff has a total permanent psychological disability which resulted directly from the on the job accidents on November 2, 1978, and March 30, 1978.

26. That if there had been no accident on March 30, 1978, the plaintiff would not have had the emotional and psychological problems which he has had following the accident on November 2, 1978.

The trial court's conclusions of law nos. 5 and 8, challenged by appellant, provided that the injuries suffered by appellee on March 30, 1978, and November 2, 1978, resulted in a 100% total permanent psychological disability, and that as a result of the pre-existing physical impairment from the March 30, 1978, injury the plaintiff's present disability is materially greater than any disability which has resulted from the accident on November 2, 1978.

In *Ballard v. Southwest Potash Corporation*, *supra*, this court noted that eligibility for relief under the Subsequent Injury Act was subject to proof of four requisites:

(a) A pre-existing permanent physical impairment.

(b) A subsequent disability compensable under our Workmen's Compensation Act.

(c) The subsequent disability must be permanent and;

(d) The subsequent disability must be " \* \* \* materially and substantially greater than that which would have resulted from the subsequent injury alone \* \* \*."

■ We view the evidence in a light most favorable to support the findings and conclusions of the trial court. The decision of the court below stands unless the findings and conclusions cannot be sustained by either the evidence or permissible interferences derived therefrom. *Lujan v. Pendaries Properties, Inc.*, 96 N.M. 771, 635 P.2d 580 (1981); *Den-Gar Enterprises, Inc. v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct. App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980).

At trial, plaintiff presented the testimony of four physicians and a psychologist. Dr.

Glover testified that after plaintiff's initial back injury on March 30, 1978 and subsequent laminectomy, he had a 15% disability to his body as a whole. He also testified that after plaintiff's second back injury in November, 1978, he suffered further back problems, increasing impairment to 30%. Dr. Pratt, who treated plaintiff following his second back injury, confirmed that plaintiff had a preexisting medical condition and that this was aggravated by the second injury, resulting in a medical impairment to plaintiff from 20 to 30%. He also testified that in his opinion, plaintiff was suffering from severe emotional problems which were causing his existing disability; although he could not make an apportionment between plaintiff's existing physical condition and emotional disability.

Dr. Atler diagnosed plaintiff as suffering from chronic low back syndrome with psychogenic components. He further testified that in his opinion plaintiff had a 15% physical impairment stemming from the first accident, and a 25% physical impairment due to the second accident.

Dr. Stanley Caplan, a psychologist who had treated plaintiff following his November accident, testified that plaintiff's existing condition was caused by subsequent accident; that plaintiff became totally disabled after his last accident and was unable to perform any job for which he was qualified by age, experience or retrainable skills.

Dr. Dempsey, a psychiatrist, diagnosed plaintiff's condition as "low back pain secondary to trauma and major depression, resulting in plaintiff being presently 100% disabled." He also stated that the second injury alone would not have resulted in any significant disability.

Based on the above expert testimony, the trial court found plaintiff to be 100% permanently disabled. This finding was not challenged on appeal, but appellant argues that the medical testimony does not support the court's finding that the disability resulting from the combined accidents was substantially and materially greater than would have resulted from the second injury alone.

■ The evidence and testimony reveals that the trial court's findings and conclusions are supported by substantial evidence and meet the criteria required under § 52–2–9(A), *supra*. The statute does not require that any portion of a disability attributable to the initial injury be greater than that of the second, merely that the entire subsequent disability be "materially and substantially" greater than the first injury alone. Although appellant cites us to conflicts in the evidence and contradictions in expert testimony, we do not weigh conflicting evidence or determine the credibility of witnesses, as that is the duty of the trial court. *Lujan v. Pendaries Properties, Inc., supra.* Appellant's second point is without merit.

3) *Liability of Fund for Other Expenses*

Appellant's third contention challenges the propriety of the trial court's judgment adjudicating the Fund liable for any portion of workmen's compensation benefits awarded for the first eight weeks of plaintiff's second disability under § 52–2–11(C), N.M. S.A.1978. Appellant further asserts that the Subsequent Injury Act does not authorize an award against the Fund for any portion of medical expenses, costs or attorney's fees stemming from a subsequent injury award, under § 52–2–9(A), N.M.S.A. 1978.

Appellees concede that § 52–2–11(C), *supra*, exempts the Second Injury Fund from liability for payment of any portion of compensation benefits payable for the first eight weeks. The statute provides in applicable part:

C. For injuries which occur on or after July 1, 1963, *the employer or his insurance carrier shall pay all compensation benefits for the first eight weeks for the combined condition* of disability or for death provided under the Workmen's Compensation Act and for any period thereafter liability shall be apportioned by the judgment; [Emphasis supplied.]

Appellant further argues that the lack of any specific statutory references in the Subsequent Injury Act expressly authorizing an award from the Fund for medical expenses, rehabilitation costs or attorney's fees, must be construed as an intention on

the part of the legislature to limit recovery from the Fund to awards of a proportionate share of weekly compensation benefits and not to other additional expenses.

Section 52–2–9, *supra,* provides in applicable part:

A. When an employee of an employer subject the provisions of the Workmen's Compensation Act * * * who has a permanent physical impairment and who incurs a subsequent disability by accident * * * *then the employer or his insurance carrier shall pay awards of compensation for the combined condition of disability as provided in* * * * [§ 52–2–11 N.M.S.A. 1978] of this Subsequent Injury Act *and all medical and related expenses provided by the Workmen's Compensation Act.* [Emphasis supplied.]

Section 52–2–11, *supra,* states in part:

Liability for payments for injuries compensable from the subsequent injury fund shall be apportioned between the employer or his insurance carrier and the fund according to the following schedule:

 * * * * * *

E. all payments of compensation benefits shall be initially paid to the employee or his dependents entitled thereto by the employer or his insurance carrier *and the sums paid for which the subsequent injury fund is liable shall be repaid to the employer or his insurance carrier* making payments from the fund at the end of each quarter during which payment is made; * * *. [Emphasis supplied.]

The import of the above statutory provisions and the declared purposes of the act express a legislative intent not to restrict Fund liability to weekly compensation benefits exclusive of other expenses, but to permit apportionment of costs, rehabilitation expenses, and attorney's fees awarded to plaintiff. This construction is consonant with § 52–2–11(F), *supra,* which provides that: "The employer or his insurance carrier shall receive credit for payments made under Subsections A, B and C of this section *and shall be reimbursed by the fund for any payments made in excess of his or its apportioned liability."* (Emphasis supplied.)

The above statutory language reveals a legislative intention to permit the trial court to assess proportionate liability between an employer and the Fund for all compensation benefits, including weekly benefits, costs, rehabilitation expenses, medical expenses, and attorney's fees in favor of an injured workman.

The judgment of the trial court is hereby affirmed, except for that portion assessing liability of the Second Injury Fund for the first eight weeks of the subsequent disability. The case is remanded to the district court for modification of its judgment by deleting the Fund's liability for the initial eight weeks of workmen's compensation benefits.

Although a notice of cross-appeal was filed in this case, it was not followed by timely filing of a brief-in-chief as required by N.M.R.Civ.App.P. 9(b), N.M.S.A.1978. Under N.M.R.Civ.App.P. 9(f), such a failure to file amounts to an abandonment of the cross-appeal.

IT IS SO ORDERED.

SUTIN and LOPEZ, JJ., concur.