749 P.2d 1123

Raymond E. MARES,
Plaintiff–Appellee,

v.

VALENCIA COUNTY SHERIFF'S DE-
PARTMENT, Employer, and Rockwood
Insurance Company, Insurer, Defend-
ants–Appellees,

and

Vicente B. Jasso, Superintendent of In-
surance of the State of New Mexico,
and the New Mexico Subsequent Injury
Fund, Defendants–Appellants.

and

VALENCIA COUNTY SHERIFF'S DE-
PARTMENT, Employer, and Rockwood
Insurance Company, Insurer, Third-
party Plaintiffs–Appellees,

v.

Vicente B. JASSO, Superintendent of In-
surance of the State of New Mexico,
and the New Mexico Subsequent Injury
Fund, Third-party Defendants–Appel-
lants.

No. 9847.

Court of Appeals of New Mexico.

Jan. 12, 1988.

James A. Mungle, James A. Mungle, P.A., Albuquerque, for plaintiff-appellee.

Matthew P. Holt, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendants-appellees & third-party plaintiffs-appellees.

Mel E. Yost, Marykay Martin Zimbrick, Poole, Tinnin & Martin, P.C., Albuquerque, Hal Stratton, Atty. Gen., Maureen S. Reed, Asst. Atty. Gen., State Corp. Com'n, Santa

Fe, for appellants & third-party defendants-appellants.

## OPINION

DONNELLY, Chief Judge.

This case involves the proper method for determining the liability of the Subsequent Injury Fund (Fund), where the employer and its insurance carrier enter into a settlement with an injured worker, and both subsequently seek reimbursement from the Fund under the Subsequent Injury Act (SIA).

The Fund appeals from a judgment awarding plaintiff, Raymond E. Mares (Mares), compensation benefits, ordering reimbursement and apportioning liability for worker's compensation benefits between the Fund, Valencia County Sheriff's Department (employer), and its insurance carrier, Rockwood Insurance Company (Rockwood). We discuss: (1) whether the trial court's findings and conclusions as to disability and apportionment of liability are supported by substantial evidence and whether it was error to order reimbursement in excess of the Fund's apportioned liability; (2) whether the trial court erred in its award of medical expenses; (3) whether there was error as to the award of attorney fees; and (4) whether the Fund is an entity of the state which is exempt from payment of postjudgment interest. We reverse and remand for further proceedings.

Mares was injured in November 1982, while working as a detective in the Valencia County Sheriff's Office. Following treatment for a back injury he returned to work; however, in June 1983, he again was injured. Mares underwent treatment and on resumption of employment was assigned to light duty activities. Due to his physical limitations he subsequently terminated his employment. Mares then filed suit against his employer and Rockwood. Thereafter, employer and Rockwood filed a third-party complaint against the Fund.

In January 1985, employer and Rockwood, without participation by the Fund, negotiated a court-approved settlement with Mares. Mares subsequently filed an amended complaint joining the Fund as a defendant to the action. Employer and Rockwood, through their third-party complaint, sought reimbursement from the Fund for a portion of the monies previously paid to Mares. Mares, through his direct action, sought installment payments for which the Fund is liable. Following trial on the merits, the trial court entered a judgment ordering that the Fund reimburse Rockwood for 90% of all amounts previously paid to Mares, except for the initial eight-week period for which Rockwood was solely responsible for payment of benefits; directed that the Fund pay 80% of all future compensation benefits payable to Mares, together with 80% of all reasonable medical and vocational expenses; awarded Mares $14,000 in attorney fees; and ordered the Fund to pay costs and interest on the judgment.

## I. APPORTIONMENT OF LIABILITY

■ Initially, the Fund urges that this court reconsider its opinions in *Romero v. Cotton Butane Co.*, 105 N.M. 73, 728 P.2d 483 (Ct.App.1986) and *Duran v. Xerox Corp.*, 105 N.M. 277, 731 P.2d 973 (Ct.App. 1986). In those decisions, we found that a settlement between a worker and his employer or its insurance carrier did not preclude a further adjudication of the Fund's liability to the worker. We concluded that liability of the Fund for compensation benefits was coexistent with the liability of the employer, and that the legislature contemplated settlement between the worker and his employer without foreclosing a subsequent adjudication and apportionment of the Fund's liability. Moreover, in *Duran* we found that an employer, following settlement with the worker, could also proceed against the Fund for reimbursement to the extent it paid in excess of its apportioned liability. It is the policy of this state to favor settlements whenever feasible. *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 N.M. 28, 690 P.2d 1022 (1984); *Gonzales v. Atnip*, 102 N.M. 194, 692 P.2d 1343 (Ct.App.1984); *see Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.1982). We reaffirm our rulings in *Romero* and *Duran*.

## A. Sufficiency of the Findings

■ The Fund argues that a conflict exists between the trial court's judgment and certain findings and conclusions. The Fund also argues that conclusion of law no. 8, providing that the Fund should be responsible for 80% of the benefits payable to Mares, does not find support in the trial court's findings of fact and conflicts with the judgment. We agree.

Although it found Mares totally and permanently disabled, the trial court failed to make in its decision any finding of apportionment as between the employer and the Fund. While the trial court did conclude that the employer was 20% liable and the Fund 80% liable, no finding supports these conclusions. In contrast to these findings and conclusions, the judgment orders the Fund to reimburse the employer for 90% of all amounts it paid Mares.

On appeal, we are bound by the trial court's findings of fact unless they are demonstrated to be clearly erroneous or not supported by substantial evidence. *Roybal v. Morris*, 100 N.M. 305, 669 P.2d 1100 (Ct.App.1983); *see State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 690 P.2d 1016 (1984). Findings of fact, however, which are insufficient or induced by an error of law cannot stand. *Walker v. L.G. Everist, Inc.*, 102 N.M. 783, 701 P.2d 382 (Ct.App.1985). Similarly, a judgment cannot be sustained unless the conclusions upon which it is based finds support in one or more findings of fact. *Watson Land Co. v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974); *Roybal v. Chavez Concrete & Excavation Contrs., Inc.*, 102 N.M. 428, 696 P.2d 1021 (Ct.App.1985). If findings are inconsistent and cannot be reconciled, an appellate court may remand for additional or amended findings. *See* SCRA 1986, 1-052(B)(1)(g); *see also Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976); *Jaramillo v. Jaramillo*, 103 N.M. 145, 703 P.2d 922 (Ct.App.1985), *appeal after remand, Seeley v. Jaramillo*, 104 N.M. 783, 727 P.2d 91 (Ct.App.1986).

■ In a worker's compensation case where the Fund has been joined as a party, and where it is alleged that the Fund is liable for payment of a portion of the worker's disability, the trial court is required to adopt a finding of fact based upon the evidence, specifically apportioning the extent of liability, if any, between the employer or its insurance carrier and the Fund. *See Duran v. Xerox Corp.; Romero v. Cotton Butane Co.; Smith v. Trailways, Inc.*, 103 N.M. 741, 713 P.2d 557 (Ct.App. 1986); *see also* NMSA 1978, § 52-2-11. Apportionment of liability involves a judicial determination of the extent of the employer's liability under the Workmen's Compensation Act, and the amount of compensation due the worker for the combined disability. *Duran v. Xerox Corp.; see also Ballard v. Southwest Potash Corp.*, 80 N.M. 10, 450 P.2d 448 (Ct.App.1969).

■ In apportioning the degree of disability between an employer and the Fund, the trial judge is not bound by the expert medical testimony presented and may properly reject all opinions of the experts and determine a different allocation or percentage, so long as the court's finding is reasonably within the range of the testimony presented. *Ideal Basic Industries, Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978); *Chapman v. Jesco, Inc.*, 98 N.M. 707, 652 P.2d 257 (Ct.App.1982); *Romo v. Raton Coca Cola Co.*, 96 N.M. 765, 635 P.2d 320 (Ct.App.1981). An appellate court will not second-guess the fact finder as to any finding making an apportionment of liability, if the apportionment is supported by substantial evidence. *See Marcus v. Cortese*, 98 N.M. 414, 649 P.2d 482 (Ct.App.1982).

In *Second Injury Fund v. Mich Coal Co.*, 274 N.W.2d 300 (Iowa 1979), the Iowa Supreme Court considered the issue of whether it was error for an administrative hearing officer to omit the adoption of a finding of fact specifically determining the extent of plaintiff's disability and the apportionment of liability between the second injury fund and the employer for a prior injury. There, the court reversed and remanded the case to the commissioner for further proceedings, observing:

> [T]he deputy [commissioner] made no finding of fact as to degree of disability

related to the body as a whole which resulted from the 1972 injury. This finding appears crucial to us to determine the obligations of the employer and the fund * * * * The fact findings stated the two injuries and amounts received by claimant but did not identify the degree to which the [second] injury was involved in the 80% disability of the body as a whole.

*Id.* at 303. *See also Brozek v. Lincoln County Highway Dep't*, 10 Kan.App.2d 319, 698 P.2d 392 (1985) (holding that in a subsequent injury case where the employer settles with the workman, the fact finder must specifically determine the extent of the fund's liability based on the evidence of the degree the disability is attributable to the second injury).

■ The Fund also asserts that Mares, his employer, and Rockwood failed to introduce substantial evidence to support the trial court's finding of total and permanent disability. We disagree. Determination of the decree of disability sustained by an employee in a worker's compensation action is a fact question to be decided by the trial court. *Ideal Basic Industries, Inc. v. Evans; Smith v. City of Albuquerque*, 105 N.M. 125, 729 P.2d 1379 (Ct.App.1986); *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981). The trial court found that as a direct and natural result of Mares' injuries, he was unable to perform his usual tasks and was wholly unable to perform any work for which he is fitted by age, education, general physical and mental capacity, and previous work experience.

The trial court had before it medical testimony as to Mares' limitations, as well as the worker's testimony as to his age, education, training and general physical and mental capacity. It was incumbent on the Fund to prove Mares' employability. *See Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App.1970). Here, the Fund offered no independent proof that Mares could work; nor did it offer evidence on the issue of vocational rehabilitation. As we stated in *Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App.1986),

"a determination of disability cannot be properly assessed, except in the obvious cases, until the injured worker, unable to return to his or her former job, has been afforded the benefit of vocational rehabilitation." *Id.* at 237–38, 731 P.2d at 380–81.

The evidence before the trial court was sufficient to support its determination that Mares is totally and permanently disabled. Because of the conflict between the judgment and the trial court's findings and conclusions, we determine that the cause should be remanded for adoption of additional findings and conclusions so as to clearly delineate the percentage of liability to be properly apportioned between the employer and the Fund based upon Mares' disability. *See* R. 1–052(B)(1)(g).

## B. Apportionment and Direct Payments

In addition to the conflicts involving apportionment, the Fund also asserts on appeal that the trial court erred in ordering it to reimburse employer and Rockwood in excess of its apportioned liability. Specifically, the Fund claims that this portion of the trial court's judgment is erroneous for the following reasons: first, by ordering 90% reimbursement, the court required payment in excess of the Fund's apportioned liability, which the Fund assumes was 80%; second, the Fund should not be required to pay Mares a percentage of all benefits due since August 8, 1983 because this will result in double recovery; and third, the Fund claims that a worker's entitlement is limited to 66⅔% of his average weekly wage for no more than 600 weeks, and that the trial court's judgment gives Mares benefits in excess of these limitations.

■ With regard to the first contention, we have already held the inconsistency between the judgment and the conclusion requires reversal and remand. As to requiring payment of benefits from August 8, 1983, we agree with the Fund that this will result in double recovery. The employer and Rockwood have fully compensated Mares for the period August 8, 1983 through January 23, 1985 (eight weeks af-

ter injury to date of settlement). To order the Fund to compensate Mares directly for this period would result in a double recovery. *See Anderson v. Carlsons Transp.,* 178 Mont. 290, 583 P.2d 440 (1978). Additionally, the judgment fails to specify a quantifiable sum of compensation due Mares. NMSA 1978, § 52–1–38. On remand, the trial court should order the Fund to pay Mares its proper portion of the compensation rate from January 23, 1985 and continuing for 515.86 weeks, unless sooner modified or terminated. The judgment, on remand, should be amended so as to conform to the findings and conclusions once apportionment is determined.

Mares counters, arguing that to the extent he receives double recovery, such accords with New Mexico law in general. *See Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104 (Ct.App.1983) (under comparative fault, nonsettling tort-feasor not entitled to benefit of settlement injured party makes with another tort-feasor which later turns out to be for more than his apportioned share). We agree with the Fund. To apply the *Wilson v. Galt* approach would require that we disregard the plain language of the Workmen's Compensation Act (Act) and the SIA. Compensation benefits under the Act are limited to 600 weeks for the maximum weekly benefits payable at the time of the accidental injury. *See* NMSA 1978, § 52–1–47. Those limitations are adopted in the SIA. *See* NMSA 1978, § 52–2–12.

We discuss the formula for computing reimbursement to the employer when a worker and his employer have entered into a settlement agreement and there has been a subsequent allocation of liability between the Fund and the employer. In determining the amount of reimbursement owed by the Fund to the employer or its insurance carrier, liability of the Fund is limited to its apportioned liability. *See* § 52–2–11; *Duran v. Xerox Corp.*

The goal then is:

1. To provide reimbursement to the employer for any payments made in excess of its apportioned liability;

2. To pay the worker directly for the liability apportioned against the Fund (i.e., for that portion of the disability that is materially and substantially greater than that which would have resulted from the subsequent injury alone);

3. To not bind the Fund to the settlement; and,

4. To limit total benefits as prescribed by the Act and SIA.

The employer or insurance carrier is solely responsible for payment of compensation benefits for the first eight weeks of disability and is not entitled to reimbursement for this period. *See* § 52–2–11(A). Thereafter, liability between the Fund and the employer is controlled by the apportionment ordered by the court and the employer is entitled to reimbursement to the extent it may have paid in excess of its apportioned liability. *See* § 52–2–11(B). Because, however, the Fund can seek diminution or termination of the worker's disability, pursuant to NMSA 1978, Section 52–1–56, it is not required to reimburse the employer for any overpayment unless the worker continues to be totally and permanently disabled. Thus, reimbursement of any overpayment should be paid quarterly by the Fund over the remaining weeks that the worker receives compensation, unless the Fund's liability is terminated or reduced as a result of a hearing pursuant to Section 52–1–56.

In calculating the worker's entitlement to compensation, Section 52–2–11(C) provides for direct payments by the Fund to the worker after settlement with his employer. Thus, beginning with January 23, 1985, when the worker last received weekly benefits, the Fund is liable to the worker for its apportioned share of compensation benefits (payable twice a month) for the remainder of the maximum period of 600 weeks, unless the Fund's liability is sooner terminated or reduced under Section 52–1–56. Because more than two and one-half years have elapsed since January 23, 1985, when the employer and Rockwood entered into a court-approved settlement with Mares, the Fund should bring its share of the compensation payments due to

Mares current with a lump-sum payment and thereafter make bi-weekly payments. *See* NMSA 1978, §§ 52–5–12 & 52–2–12.

We determine that the portion of the judgment which orders the Fund to pay Mares 80% of his compensation rate per week from August 8, 1983 until further order of the court was in error.

## II. REIMBURSEMENT OF MEDICAL EXPENSES

The Fund challenges the validity of that portion of the judgment which orders it to reimburse Rockwood for medical expenses and asserts that the amount and reasonableness of these expenses were not proven at trial. The medical expenses in issue were those paid by employer and Rockwood pursuant to their settlement agreement with Mares. The trial court found that Mares entered into a settlement with Rockwood and that it agreed to pay for past medical expenses in the amount of $7,231.47, together with anticipated future medical expenses in the amount of $2,750. At trial, only two medical bills, totalling $3,921, were introduced into evidence.

■ Generally, a party seeking recovery for medical expenses in a compensation action must present evidence that the expenses are reasonably necessary and that they are directly related to the worker's disability. *Williams v. City of Gallup,* 77 N.M. 286, 421 P.2d 804 (1966); *see DiMatteo v. County of Dona Ana,* 104 N.M. 599, 725 P.2d 575 (Ct.App.1985); *Cardenas v. United Nuclear Homestake Partners,* 97 N.M. 46, 636 P.2d 317 (Ct.App.1981). A bill for medical services rendered constitutes prima facie proof of its reasonableness. *Scott v. Transwestern Tankers, Inc.,* 73 N.M. 219, 387 P.2d 327 (1963); *Pritchard v. Halliburton Servs.,* 104 N.M. 102, 717 P.2d 78 (Ct.App.1986). The party seeking reimbursement for medical expenses has the burden of proof on that issue. *DiMatteo v. County of Dona Ana.*

■ Applying the above rules to the case herein, we determine that it was error for the trial court to direct reimbursement of medical bills and expenses in the absence of proper proof at trial. The Fund is not bound by the terms of a settlement between the worker and the employer, and in which it did not participate. The employer and Rockwood can recover from the Fund only to the extent they paid medical bills of Mares in excess of their apportioned liability, and so long as those medical bills were properly introduced into evidence and proven to be reasonably necessary and related to the worker's subsequent injury.

■ Additionally, the judgment ordered the Fund to pay, commencing August 8, 1983, 80% of all reasonable medical and vocational rehabilitation expenses. This provision is incorrect. The August 8, 1983 date, being 8 weeks after the injury, is a statutory restriction applicable only to compensation. Medical and rehabilitation expenses, unlike compensation payments, accrue from the date of the second injury, i.e., June 7, 1983. However, since the employer and Rockwood paid all medical expenses from the date of injury to the date of settlement, and they are entitled to reimbursement only for amounts paid in excess of their apportioned liability, on remand the trial court shall require reimbursement by the Fund to the extent of its apportioned liability of those medical expenses actually proven at trial, i.e., $3,921. The Fund is also liable to pay its allocated percentage of future medical and rehabilitation expenses, if and when they are incurred.

## III. AWARD OF ATTORNEY FEES

Under the terms of the settlement agreement, the employer and Rockwood paid $4,000 in attorney fees and $178.77 in costs to Mares. The Fund did not participate in the settlement, however, the final judgment entered by the trial court ordered that the Fund reimburse 90% of these attorney fees and costs to the employer and Rockwood. The Fund challenges the propriety of this award citing the absence of evidence to uphold the award. In addition, the trial court awarded Mares attorney fees of $14,000 plus tax. Mares' fees are not in issue.

With respect to reimbursement for attorney fees paid by the employer and Rockwood in settlement, the Fund argues that it should not have to pay any portion of the fees incurred by Mares in his suit against the employer and Rockwood. The Fund points out it had not been sued by Mares at the time of the settlement and did not participate in the settlement. The Fund contends that if it can be made to reimburse for these attorney fees, an employer and its carrier can make critical litigation decisions such as the amount to pay in attorney fees pursuant to a settlement that benefits only them, then later hold the Fund liable for that decision.

▇▇▇ We need not resolve that question. Here, employer failed to establish proof to justify reimbursement for any attorney fees paid; therefore, as with the unproven medical bills, there can be no reimbursement for attorney fees.

## IV. AWARD OF INTEREST

The Fund's final argument raises an issue of first impression. The Fund contends that it was error for the trial court to order it to make payments of postjudgment interest at the rate of 15% per annum. The Fund argues that the Subsquent Injury Act does not contain any provision for the payment of interest by the Fund, that the Fund is a state entity, and that the general statute providing for the payment of interest, NMSA 1978, Section 56–8–4(D) (Repl. 1986), specifically provides that the state shall be exempt from the payment of postjudgment interest. In response, Mares argues that the second injury fund is not a state entity, within the contemplation of Section 56–8–4.

Section 56–8–4 authorizes an award of interest on judgments in civil cases. This section has previously been held to apply in workmen's compensation cases. *See Genuine Parts Co. v. Garcia,* 92 N.M. 57, 582 P.2d 1270 (1978); *Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 703 P.2d 925 (Ct.App. 1985); *Trujillo v. Beaty Elec. Co.,* 91 N.M. 533, 577 P.2d 431 (Ct.App.1978).

Courts in other jurisdictions that have considered the issue of whether subsequent injury funds or special workmen's compensation funds are in fact instrumentalities of the state, have reached conflicting results. Representative of this divergency are: *Rauschan v. Gilbert,* 80 Cal.App. 754, 253 P. 173 (1927); *McAvoy v. H.B. Sherman Co.,* 401 Mich. 419, 258 N.W.2d 414 (1977); *Methodist Hosp. v. State Ins. Fund,* 102 A.D.2d 367, 479 N.Y.S.2d 11 (1984). *Contra State ex rel. Williams v. Musgrave,* 84 Idaho 77, 370 P.2d 778 (1962); *Senske v. Fairmont & Waseca Canning Co.,* 232 Minn. 350, 45 N.W.2d 640 (1951); *Moran v. State ex rel. Derryberry,* 534 P.2d 1282 (Okla.1975).

Analysis of the cases relied upon by each of the parties, although instructive, is not dispositive of the issue before us because of the purposes and specific provisions of this state's SIA. NMSA 1978, Section 52–2–13 states that the "determination of the rights of an employee or those persons claiming dependency benefits under the provisions of the [SIA] shall be made in the same manner as in cases arising under the Workmen's Compensation Act." Similarly, Section 52–2–12 provides that "payments prescribed by [the SIA] shall be subject to the same limitations, in time and in amount as those under the Workmen's Compensation Act."

The primary purpose of the Fund is to encourage the employment of handicapped persons. *See* NMSA 1978, § 52–2–2(A); *Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 650 P.2d 3 (Ct.App.1982). As stated in *Vaughn,* the SIA should be liberally interpreted in view of its remedial and beneficient purposes. *Id.* at 486–487, 650 P.2d at 9.

▇▇▇ The above provisions, we conclude, evince a legislative intent to permit the trial court in its discretion to allow interest on compensation benefits payable by the Fund and awarded to an injured or disabled workman. Allowance of interest, however, is limited to that portion of a judgment against the Fund in favor of an injured worker, and the Fund is not liable for the payment of interest on that portion of reimbursement payable by the Fund to an employer or its carrier. *Cf. Superin-*

752

*tendent of Ins. v. Mountain States Mut. Casualty Co.,* 104 N.M. 605, 725 P.2d 581 (Ct.App.1986). Additionally, any award of postjudgment interest under the SIA does not commence to run upon unaccrued compensation benefits until the time fixed for its payment. *See* § 52–1–38; *Can v. C.C. Anderson Co.,* 67 Idaho 1, 169 P.2d 505 (1946); *Fleming v. National Cash Register Co.,* 188 Kan. 571, 363 P.2d 432 (1961); *Komosa v. Monsanto Chem. Co.,* 317 S.W.2d 396 (Mo.1958) (En Banc).

## CONCLUSION

This case is remanded to the trial court for adoption of additional specific findings of fact, modification of its findings and conclusions, and for entry of an amended decision and judgment consistent with this opinion.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.