784 P.2d 38

**Wallace RADER, Plaintiff–Appellee,**

v.

**DON J. CUMMINGS COMPANY, INC., a New Mexico Corporation, and Fireman's Fund Insurance Company, Defendants–Appellants,**

v.

**Fabian CHAVEZ, State Superintendent of Insurance, and the New Mexico Subsequent Injury Fund, Third–Party Defendants–Appellants.**

No. 10920.

Court of Appeals of New Mexico.

Sept. 19, 1989.

Certiorari Denied Nov. 1, 1989.

---

Eric S. Jeffries, C. Kristine Osnes, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for plaintiff-appellee.

James P. Lyle, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellants.

Byron Caton, Briones & Caton, P.A., Farmington, for third-party defendants-appellants.

## OPINION

BIVINS, Chief Judge.

This court's opinion filed August 31, 1989, is withdrawn and the following substituted therefor.

Plaintiff Wallace Rader sued his employer, Don J. Cummings Company, Inc., and its insurance carrier, Fireman's Fund Insurance Company (hereinafter collectively referred to as "employer"), under the Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 to –69 (Orig. Pamp.), and the Occupational Disease Disablement

Law, NMSA 1978, Sections 52–3–1 to –59 (Orig. Pamp.), for benefits allegedly resulting when Rader became totally and permanently disabled February 7, 1986. Employer later impleaded the New Mexico Subsequent Injury Fund (SIF), seeking apportionment of any award in favor of Rader. From a judgment awarding Rader total permanent disability and apportioning liability for benefits, attorney fees, and costs, 22% to employer and 78% to SIF, employer and SIF appeal.

Employer's appeal challenges the award of Rader's attorney fees. SIF's appeal seeks to avoid apportionment of any liability to it, based on: (1) a claimed deficiency in the certificate of preexisting disability; (2) a lack of proof of any preexisting impairment which disabled Rader from work or constituted an obstacle to continued employment; (3) a claimed failure of proof to establish apportionment; (4) a claim that benefits, if any, are exclusively payable under the Occupational Disease Disablement Law; and (5) a claim that employer is not entitled to reimbursement for Rader's attorney fees, absent proof that SIF benefited from such fees. We affirm on all issues except apportionment as between employer and SIF.

The trial court found that Rader worked for employer from 1963 until February 7, 1986, when he became totally and permanently disabled. All parties agree that Rader was totally and permanently disabled from and after that date. The trial court further found that, while working for employer, Rader was exposed on a daily basis to asbestos dust, dust from insulation, dust created by welding, and other pollutants, which, over time, caused accidental injuries to his lungs, resulting in an accidental injury in February 1986, for which employer was liable under the Workmen's Compensation Act.

On the second day of trial, Rader and employer entered into a stipulation essentially resolving all issues between them, except the defense of the statute of limitations. The trial court found against employer on that issue; employer does not appeal that issue. Thus, the issues between Rader and employer have been resolved, except for the issue of attorney fees.

SIF'S APPEAL

1. *Certificate of Preexisting Physical Impairment*

SIF claims that the certificate of preexisting physical impairment filed with the superintendent of insurance fails to meet the requirements of Section 52–2–6 of the Subsequent Injury Act, NMSA 1978, §§ 52–2–1 to –13 (Orig. Pamp. & Cum. Supp.1986) (Interim Act), in several respects. First, SIF says that the certificate, while describing the nature of the preexisting impairment, fails to express it as a percentage as required by Section 52–2–6(B). Second, Rader refused to sign the certificate; moreover, he was no longer employed when the certificate was prepared and filed, and therefore could not be made to sign. § 52–2–6(A). Third, SIF claims that the certificate was not timely filed.

(a) Requirement that Certificate State Percentage of Impairment

In making its argument under this subpoint, SIF relies on two provisions of the Interim Act: 1986 N.M. Laws, ch. 57, Section 3 (codified as Section 52–2–6), and 1986 N.M. Laws, ch. 22, Section 46 (codified as Section 52–2–3). Section 52–2–6(B) requires that the certificate shall set forth the nature of the impairment "both as a description of the impairment and as a percentage of the permanent physical impairment of the body as a whole." Under Section 52–2–3(A) of the Interim Act, "permanent physical impairment" means

any permanent physical defect, due to a previous accident or disease or due to any congenital condition, which is capable of being expressed in percentage terms as determined by medically or scientifically demonstrable findings as presented in the American medical association's guides to the evaluation of permanent impairment, copyright 1984, 1977 or 1971, or comparable publications by the American medical association.

Because Dr. Gorman, who signed the certificate, could not express Rader's impairment in terms required by those provisions, SIF claims the certificate was defective, and therefore, under Section 52–2–6(D) of the Interim Act, that act does not apply and SIF is not liable. Dr. Gorman expressed Rader's "percentage of disability" as "[p]atient's useful working life will end at age 67."

We need not decide whether the certificate substantially satisfies the requirements of the Interim Act provisions relied upon by SIF. The Interim Act does not apply to this claim. 1986 N.M. Laws, chapter 22, section 101 states, "The provisions of Sections ... 46 [52–2–3] ... of this act shall apply to injuries ... occurring ... on or after the effective date of those sections." This section of the act contained no effective date, but pursuant to N.M. Const. article IV, section 23, the section was effective on May 21, 1986. The 1986 amendment to Section 52–2–6 also contained no effective date, see 1986 N.M. Laws, ch. 57, and therefore the amendment was effective on May 21, 1986.

In this case, Rader became totally and permanently disabled on February 7, 1986, almost three months before the effective dates of the Interim Act provisions relied on by SIF. In Strickland v. Coca–Cola Bottling Co., 107 N.M. 500, 760 P.2d 793 (Ct.App.1988), we held that the date the injury becomes compensable, rather than the date of accident, controls as to which statute governs the claim. In the case before us, the date that the injury manifested itself, February 7, 1986, and the date that Rader became disabled, are the same. Thus, the original Subsequent Injury Act applies. §§ 52–2–1 through –13 (Orig. Pamp.).

Since SIF makes no argument under the provisions of the original Subsequent Injury Act, we need not address the question further.

(b) and (c) Failure to Sign and Late Filing

The claimed defects based on Rader's failure or refusal to sign the certificate and the late filing can also be summarily answered. Employer, in its brief, states that Rader refused to sign the certificate unless employer would agree it was 100% liable for the compensation benefits as a result of the subsequent injury, and that this was explained in a letter to the superintendent of insurance that accompanied the certificate. On those facts, we believe that the certificate substantially complies with the purposes of the statute. The purposes of the Subsequent Injury Act, as discussed in Vaughn v. United Nuclear Corp., 98 N.M. 481, 650 P.2d 3 (Ct.App. 1982), are to encourage employers to hire or to retain injured or impaired workers, and to document the nature and extent of their impairment. The purpose of encouraging employers to retain handicapped workers is satisfied where, as here, the employer had actual notice of the disability and retained the worker.

We recognize, however, that the purpose of documenting the impairment is minimally served, if at all, where the employer and the worker wait until long after the subsequent injury to document the preexisting impairment. Nevertheless, the supreme court in Fierro v. Stanley's Hardware, 104 N.M. 50, 716 P.2d 241 (1986), held that the certificate of preexisting physical impairment can validly be filed after the subsequent injury where the employer, before the subsequent injury, had actual knowledge of the employee's preexisting impairment. Subsequent to the supreme court decision in Fierro, the legislature in 1988 amended the requirements for filing a certificate of preexisting permanent physical impairment and now provide that the Subsequent Injury Act is only applicable to a disability "arising out of an accident or occurrence taking place after the date a certificate ... is executed and filed with the superintendent of insurance." See NMSA 1978, § 52–2–6 (Supp.1988). Since we decide this issue under the law in effect when the injury manifested itself, we determine that in this case, there was evidence that employer did have knowledge of Rader's preexisting physical impairment. It was aware of Rader's breathing problems in the early 1970's. Employer purchased a

breathing machine for Rader to help him breathe and stay productive.

■ Moreover, where an employer does have actual knowledge, we do not believe that it should be denied the opportunity of impleading SIF by the actions of the worker in refusing to sign the certificate, particularly where such refusal was apparently premised on an improper basis. *Cf. City of Roswell v. Chavez,* 108 N.M. 608, 775 P.2d 1325 (Ct.App.1989) (employer's action against SIF barred by statute of limitations where employee refused to sign certificate, and employer did not attempt to substantially comply with statute by filing unsigned certificate).

We reject SIF's arguments under this point.

### 2. *Does the Worker's Preexisting Impairment Have to Be Disabling?*

■ As we understand SIF's argument, it contends that, before the Subsequent Injury Act can become applicable, the worker's preexisting physical impairment must have been disabling. It relies on *Sentry Insurance Co. v. Gallegos,* 87 N.M. 249, 531 P.2d 1222 (Ct.App.1975), and *Ballard v. Southwest Potash Corp.,* 80 N.M. 10, 450 P.2d 448 (Ct.App.1969). From this point, SIF argues that, while Rader did have a preexisting lung disease, it did not disable him from working. We disagree that the Subsequent Injury Act requires that the preexisting physical impairment be disabling, and do not read the cases on which SIF relies as so holding.

*Ballard* states that, assuming a certificate of preexisting impairment and other procedural requirements are met, applicability of the Subsequent Injury Act depends on four things: (1) a preexisting permanent physical impairment; (2) a subsequent disability compensable under the Workmen's Compensation Act; (3) the subsequent disability must be permanent; and (4) the subsequent disability must be materially and substantially greater than that which would have resulted from the subsequent injury alone. We do not read *Ballard* or *Sentry* as holding that a worker must be disabled by the preexisting impair-

ment in order for the Subsequent Injury Act to apply. Neither case stands for that proposition.

Nor do we read the Subsequent Injury Act as requiring that the worker's preexisting physical impairment be disabling. Section 52–2–9(A) provides in pertinent part:

> When an employee ... who has a permanent physical impairment and who incurs a subsequent disability ..., which results in a permanent disability, that is materially and substantially greater than that which would have resulted from the subsequent injury alone, then the employer or his insurance carrier shall pay awards of compensation for the combined condition of disability....

The term "permanent physical impairment" is defined under Section 52–2–3 as meaning "a permanent physical condition which is, or which is likely to be, an obstacle to employment." That same section provides that the words "disability," "partial disability," and "total disability" shall have the same meaning as defined in and construed under the Workmen's Compensation Act. Thus, it is clear under the plain meaning of these provisions that there is no requirement that the preexisting physical impairment be disabling. Certainly, had the legislature intended such, it would not have been necessary under Section 52–2–3 to set forth a specific definition for "permanent physical impairment" separate and apart from the definition of "disability."

We reject this claim also.

### 3. *Sufficiency of Evidence for Apportionment*

■ In its conclusion of law No. 4, the trial court apportioned liability, 22% to employer and 78% to SIF. Although denominated a conclusion of law, we treat conclusion No. 4 as a mixed finding of fact and conclusion of law. *See Sheraden v. Black,* 107 N.M. 76, 752 P.2d 791 (Ct.App.1988) (conclusion of law may be treated as finding of fact).

SIF's position is that "evidence of work life expectancy and the shortening of such expectancies attributed to the aggravation

are irrelevant to the case, and are an improper method of determining [apportionment]." The question, then, is whether a showing of decrease in work life expectancy may be used to determine apportionment of liability between employer and SIF where, as here, the medical testimony indicates that a percentage apportionment is not possible.

"A contention that a ... finding of fact is not supported by substantial evidence shall be deemed waived unless the party so contending shall have included in his summary of proceedings the substance of the evidence bearing upon the proposition...." SCRA 1986, 12–213(A)(3). SIF did not comply with this rule. While it provided evidence regarding the testimony of Dr. Gorman, it did not provide the substance of the testimony of employer's expert, Bill Patterson. Nevertheless, we believe that this issue should be answered on its merits, since employer does provide sufficient evidence in its answer brief, and we have not heretofore addressed this question. We hold that there was sufficient evidence in the trial court to apportion liability. We disagree, however, with the manner in which it was done. In short, we hold the evidence does permit apportionment, but does not support the result reached. Our discussion explains why.

■ In cases where the employer seeks reimbursement from the fund, the employer has the burden of proving apportionment. *Smith v. Trailways, Inc.,* 103 N.M. 741, 713 P.2d 557 (Ct.App.1986). It has the burden of establishing the difference between the compensation payable for the worker's combined injury and the compensation that would have been payable as a result of the second injury alone. *See id.*

In this case, employer provided sufficient evidence for the trial court to apportion liability. Dr. Gorman testified that Rader suffered from chronic obstructive lung disease, not caused by his work conditions, which over time would have disabled him. He said that aggravating factors related to work accelerated the rate of disability. Dr. Gorman testified that the acceleration leading to disablement caused by work was materially and substantially greater than the progression of the disease caused by Rader's preexisting condition. Although he could not assign a percentage to each cause, Dr. Gorman did say to a reasonable degree of medical probability that the preexisting condition alone would have disabled plaintiff at age sixty-seven. The fact that Rader was totally disabled at age fifty-four, instead of age sixty-seven, would then have been attributable to the additional acceleration caused by the aggravating work conditions.

Bill Patterson, an economist, testified that, using federal statistical data, a white male, age fifty-five with no health problems, would have a life expectancy of 21.6 years. Thus, of all white males age fifty-five with no health problems, one-half can expect to live to age 76.6; the other half will die. Of those who live, according to Mr. Patterson, some are capable of earning a living and working in the labor force.

The trial court apparently accepted employer's calculation in apportioning liability 22% to employer and 78% to SIF. Employer calculated as follows: Rader began working at age sixteen. Expert testimony at trial established that healthy white males of Rader's age would live until age 76.6, and that some of them could continue to work. Therefore, Rader's work life expectancy, without any preexisting impairment or work-related condition, was 60.6 years. Rader's subsequent injury shortened his work life expectancy by thirteen years (difference between age sixty-seven, when he could be expected to become disabled because of the preexisting impairment, and age fifty-four, when he did become disabled due to the work-related condition). Employer correctly divided 13 years by 60.6 years to determine that the work-related condition shortened Rader's work life by 21.45%, thus establishing its liability as 21.45%.

Although employer's arithmetic was correct, we believe its calculation is flawed because employer incorrectly determined which figures to use in its calculations. The appropriate calculation is not based on what percentage of Rader's *overall* work

life was shortened by the work-related condition and the preexisting condition, but, rather, what percentage of Rader's *shortened* work life is due to each.

As established by testimony, Rader's work life expectancy was 60.6 years. (76.6 minus 16 (the age Rader began working) equals 60.6.) However, since he became disabled at 54, his work life was shortened overall by 22.6 years. (54 minus 16 equals 38; 60.6 minus 38 equals 22.6.) Since he would have become disabled at 67 due to the preexisting lung condition, that condition alone would have shortened his work life expectancy by 9.6 years. (76.6 minus 67 equals 9.6.) However, the work-related condition further shortened his work life expectancy by 13 years. (67 minus 54 equals 13.) Therefore, employer is responsible for 13 years of the 22.6-year shortening, and SIF for 9.6 years.

Thus,

13 divided by 22.6 equals 57.52% due to work, and

9.6 divided by 22.6 equals 42.48% due to preexisting condition.

Because the trial court accepted employer's erroneous calculations, we remand for recalculation of the apportionment. In doing so, the trial court may use the 76.6 life expectancy figure Mr. Patterson provided, any other figures in evidence, or any other figures of which the court may take judicial notice. On this point we make two observations. First, it seems highly unlikely that a person would continue to work full-time throughout his or her full life expectancy. Indeed, we do not perceive that to be Mr. Patterson's testimony. He testified that some healthy males Rader's age could live to age 76.6, and that some of them could continue at some form of work until that time. He did not testify that it would be full-time. Second, we note that federal law at the time Rader became totally disabled provided that employers may not mandate retirement earlier than age seventy. *See* § 631 of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 (1982). The court on remand may take judicial notice that a person's work life expectancy is to that age, rather than

to age 76.6. If the court determines Rader's work life expectancy would have been to age seventy, then Rader's work life was shortened by sixteen years instead of 22.6, and employer is responsible for 81.25% (13 divided by 16), and SIF for 18.75% (3 divided by 16).

### 4. *Should the Claim Have Been Determined Under the Occupational Disease Disablement Law?*

■ SIF argues that, because the trial court found that Rader was exposed on a daily basis to asbestos dust and that such exposure, peculiar to the work site, caused and aggravated his pulmonary fibrosis, bronchitis, chronic pulmonary obstruction, and asbestosis, jurisdiction of Rader's claim should have been under the Occupational Disease Disablement Law rather than the Workmen's Compensation Act. Because the Occupational Disease Disablement Law is not mentioned in the Subsequent Injury Act, SIF claims that it cannot be held liable for any part of Rader's disability. Employer takes no position on SIF's argument under this point. This is difficult to understand. If SIF is not liable for apportionment under the Occupational Disease Disablement Law, then employer must pay the entire benefits.

In addressing this issue, we assume, but do not decide, that SIF is correct in saying the Subsequent Injury Act does not apply to disability or disablement arising under the Occupational Disease Disablement Law. *See* 1B A. Larson, *Larson's Workmen's Compensation Law* § 41.86 (1987). The question, then, is whether the trial court should have concluded that Rader's claim was compensable under the Occupational Disease Disablement Law. Based upon the findings made, which are not challenged, we hold that it did not err.

The trial court found that from 1963, when Rader began working for employer, until February 1986, he was exposed, on a daily basis, "to asbestos dust, dust from insulation, dust created by welding, and other pollutants, which, over time, caused *accidental injuries* to his lungs" and that "employer is liable under the New Mexico

Workmen's Compensation Act." (Emphasis added.) The court also found that "[e]xposure to dusts and asbestos *peculiar to the work site* caused and aggravated, overtime [sic], the pulmonary fibrosis, bronchitis, chronic pulmonary obstruction and asbestosis within both of Mr. Rader's lungs." (Emphasis added.) It concluded that Rader's accident or accidents fell within the meaning of the Workmen's Compensation Act as a compensable accident that rendered Rader totally and permanently disabled.

■ In order for the Occupational Disease Disablement Law to apply, it must be established that the disease is peculiar to the worker's occupation and not merely to his workplace. *Chadwick v. Public Serv. Co.*, 105 N.M. 272, 731 P.2d 968 (Ct.App. 1986). Here, the trial court found that exposure to dusts and asbestos "peculiar to the work site" aggravated Rader's preexisting lung problems. It did not, however, find that exposure peculiar to Rader's occupation. Quoting from a New York court, we approved the following statement in *Chadwick:*

> "[W]e view an occupational disease as an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed, not an ailment caused by the peculiar place in which [the] particular claimant happens to work...." *Paider v. Park East Movers*, 19 N.Y.2d 373, 380, 280 N.Y.S.2d 140, 144, 227 N.E.2d 40, 43 (1967).

105 N.M. at 274, 731 P.2d at 970.

■ Further, we note that in order for there to be an occupational disease, in addition to the requirement that it be peculiar to claimant's occupation, the conditions must attach to that occupation a hazard that distinguishes it from the usual run of occupations and is in excess of the hazards attending employment in general. *Chadwick v. Public Serv. Co.*

In this case, the trial court made no finding that Rader's disease was peculiar to his occupation; nor was it requested to so find. Nor was any finding made or requested on the requirement that the con-

ditions attach distinctive hazards to the occupation that are in excess of those attending employment in general. *See* SCRA 1986, 1–052(B)(1)(f) (party waives specific finding of fact if he fails to make a general request or fails to tender specific finding).

We recognize it would have been incumbent upon Rader to establish these requirements had he pursued his count under the Occupational Disease Disablement Law. He did not pursue it, so the burden rested with SIF to prove the requirements if it wanted to rely on that law to defend against employer's claim. It failed to meet that burden. We reject this claim.

### 5. *Apportionment of Attorney Fees*

■ SIF argues that it should not be liable for part of the attorney fees awarded Rader, absent evidence that SIF benefited from those fees. SIF's complaint is that counsel for Rader and employer "were literally at each other's throat" throughout this litigation, and that it should not be compelled to pay for this. Moreover, it says that *Duran v. Xerox Corp.*, 105 N.M. 277, 731 P.2d 973 (Ct.App.1986), is unfair because it allows "an employer to call the shots ... and still be able to share the cost of his bad judgment if the result is not good." In *Duran*, SIF contended that a settlement between the employer and the worker barred further proceedings by either against SIF. We held in that case that, following settlement between the employer and the worker, each could proceed separately against SIF.

The question presented here is whether, in apportioning liability between employer and SIF, the trial court was required to apportion attorney fees in the same manner that it apportioned liability for compensation benefits. While the Subsequent Injury Act makes no distinction between liability for compensation benefits and liability for attorney fees or other costs, we see no reason why apportionment must be the same. To hold otherwise would encourage extensive and unnecessary litigation of workers' compensation cases, a result inimical to the purposes of this legislation.

In *Gonzales v. Stanke–Brown & Associates, Inc.*, 98 N.M. 379, 648 P.2d 1192 (Ct.App.1982), we said that if specific guidance is lacking in a statute, then fundamental fairness to the parties should be the guideline. Here there is a lack of specific guidance as to how, or whether, to apportion liability for attorney fees and costs differently from liability for compensation benefits; therefore, we hold that fundamental fairness should be the guideline. In some cases, the same apportionment may apply across the board for all liability. In other cases, across-the-board apportionment may be inappropriate. Matters which the trial court may take into consideration in determining apportionment for attorney fees and costs may include the stage of proceedings when SIF was impleaded; whether worker and employer settled among themselves either before or after SIF was impleaded; the extent to which issues were appropriately litigated; and whether, as claimed here, counsel for the worker and the employer engaged in unnecessary tactics or strategies which resulted in excessive attorney fees. This list of considerations is not intended to be exhaustive.

Since we are setting aside the apportionment as made by the trial court regarding compensation benefits, the trial court, on remand, may make whatever apportionment it deems appropriate for attorney fees and costs in accordance with this opinion.

## EMPLOYER'S APPEAL

One day after filing its third-party complaint against SIF seeking apportionment, employer offered to pay Rader 22.2% of all compensation benefits and medicals then being claimed, including all future benefits and payments. The total amount of compensation and other benefits offered was $47,054.97 plus $9,410.99 in attorney fees. That offer was made more than thirty days before trial. In fact, it remained open from January 30, 1987 and, according to employer, was verbally reaffirmed several times, the last of which occurred two or three weeks before the trial. The trial court awarded Rader $41,000 in attorney fees, ordering employer to pay that amount, with SIF to reimburse employer for 78% of that amount.

Employer contends that the trial court erred in calculating the present value of Rader's award, and because of such miscalculation, it erred in awarding Rader *any* attorney fees against employer. Employer argues that, since it made an offer more than thirty days before trial in an amount that exceeded its apportioned liability, Section 52–1–54(D) precludes recovery. It contends that it makes no difference that employer was required to pay 100% of the benefits due Rader and then seek reimbursement for the apportioned liability from SIF.

In view of our holding that the trial court incorrectly apportioned liability, and it appearing that, under any factor used on remand, employer's apportioned liability would exceed its offer, we need not address this issue.

## CONCLUSION

We affirm the trial court on all issues except apportionment, and remand for new findings on that issue consistent with this opinion. Costs of appeal shall be paid by employer.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.