838 P.2d 988

**CHEVRON RESOURCES By and Through Frank BLATNIK, its Assignee, Claimant–Appellant,**

v.

**NEW MEXICO SUPERINTENDENT OF INSURANCE and New Mexico Subsequent Injury Fund, Respondents–Appellees.**

No. 13499.

Court of Appeals of New Mexico.

July 9, 1992.

Certiorari Denied Aug. 26, 1992.

David H. Pearlman, David H. Pearlman, P.A., Albuquerque, for claimant-appellant.

Nathan H. Mann, Todd E. Farkas, Gallagher, Casados & Mann, P.C., Albuquerque, for respondents-appellees.

## OPINION

HARTZ, Judge.

Frank Blatnik (Worker) appeals from the denial of his claim for benefits under the Subsequent Injury Act, §§ 52–2–1 to –14 (Repl.Pamp.1991). Worker was employed by Chevron Resources (Chevron) as an underground miner on May 1, 1986. On May 17, 1989, he filed a claim for workers' compensation benefits against Chevron based on an alleged disability beginning on July 15, 1988. He amended his claim in December 1989 to include an alternative claim for benefits under the New Mexico Occupational Disease Disablement Law (ODDL) §§ 52–3–1 to –60 (Repl.Pamp.1991). On February 15, 1990, Worker and Chevron settled their dispute. Chevron was to pay Worker a lump sum and assigned to Worker any right it had against the New Mexico Subsequent Injury Fund (Fund). On February 23, 1990, Worker petitioned for an order that the Fund pay him benefits. The settlement was approved by the Workers' Compensation Judge (WCJ) on March 7, 1990.

In response to Worker's claim against the Fund, the Fund denied Worker's allegations that he suffered an injury compensable under the Workers' Compensation Act and stated as an affirmative defense, "Any entitlement or benefits which [Worker] had was pursuant to the [ODDL], and as such [Worker] is not entitled to any recovery against [the Fund]." After an evidentiary hearing, the WCJ ruled that Worker did not suffer a compensable injury under the Workers' Compensation Act and that the Subsequent Injury Act does not apply to benefits payable pursuant to the ODDL. We affirm.

## I. THE SUBSEQUENT INJURY ACT

We begin with a brief description of the Subsequent Injury Act. Roughly speak-

ing, under the Workers' Compensation Act an employer (who in general must carry workers' compensation insurance, *see* § 52–1–4) is responsible for paying all benefits due as the result of a work-related injury to an employee. In computing the benefits owed to a worker, the Act does not deem relevant whether the worker suffered from a pre-existing impairment, even though an accidental injury to a previously impaired worker could cause significantly greater disability and require greater benefit payments than the same injury to an unimpaired worker (e.g., the loss of an eye is much more devastating if one had already lost vision in the other eye). *See Reynolds v. Ruidoso Racing Ass'n*, 69 N.M. 248, 365 P.2d 671 (1961) (worker with pre-existing osteoporosis). *But cf.* NMSA 1978, § 52–1–47(D) (Repl.Pamp.1991) (reduction of benefits to prevent duplication of benefits). Consequently, there could be an economic disincentive to hiring impaired workers; employers could expect to pay more for compensation benefits when they hire previously impaired workers.

To encourage employers to hire impaired workers, the Subsequent Injury Act provides for an insurance fund (funded by employers, *see* § 52–2–4) to reimburse employers when, because of an employee's pre-existing permanent physical impairment, a subsequent work-caused disability is "materially and substantially greater than that which would have resulted from the subsequent injury alone." § 52–2–9(A); *see Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 488–89, 650 P.2d 3, 10–11 (Ct.App.1982). This intent is stated expressly in the Subsequent Injury Act:

> **Declaration of policy and legislative intent.**
>
> As a guide to the interpretation and application of the Subsequent Injury Act, the policy and intent of this legislature is declared to be as follows:
>
> A. that every person in this state who must work for a living should have a reasonable opportunity to maintain his independence and self-respect through self-support if he has been physically handicapped;
>
> B. that a plan which will reasonably, equitably and practically operate to remove obstacles to the employment of physically handicapped persons honorably discharged from the armed forces of the United States or any other physically handicapped person is of vital importance to the state, its people and this legislature;
>
> C. that it is the considered judgment of this legislature that the provisions embodied in the Subsequent Injury Act, which make a logical and equitable adjustment of employer's liability under the Workers' Compensation Act, constitute a reasonable approach to the solution of the problem of employing physically handicapped persons; and
>
> D. that the Subsequent Injury Act shall not be construed to create, provide, augment, diminish or affect in any way the workers' compensation benefits due to an injured employee. The payment of compensation to an injured employee under the Workers' Compensation Act shall be determined without regard to the Subsequent Injury Act, and the provisions of the Subsequent Injury Act shall be considered only in determining whether an employer or his insurance carrier is entitled to reimbursement from the subsequent injury fund created in Section 52–2–4 NMSA 1978.

§ 52–2–2.

The one unusual aspect of this case is that the employee, not the employer, is the one seeking reimbursement from the Fund. Worker, however, stands in the shoes of Chevron, because his claim is based on an assignment to him of Chevron's rights against the Fund.

## II. COMPENSABILITY UNDER THE WORKERS' COMPENSATION ACT

Worker's first contention is that Chevron was entitled to recover from the Fund because Worker was a previously impaired worker who while employed by Chevron suffered an injury compensable under the Workers' Compensation Act. We consider only whether the WCJ erred in ruling that Worker did not establish that while work-

ing for Chevron he had suffered an injury compensable under the Workers' Compensation Act.

Worker contends that he was entitled to benefits under the Workers' Compensation Act because his exposure to dust, diesel fumes, carbon monoxide, and other irritants while working for Chevron aggravated a pre-existing lung impairment. In his brief-in-chief Worker points to the evidence supporting his contentions and specifically attacks the WCJ's finding that his silicosis was foreseeable and that his condition "would have further progressed and deteriorated ... even if he were removed from underground mining and did not work." He states, "While the medical evidence in the present case supports the proposition that [Worker's] disability was partially the result of the natural progression of silicosis, none of the medical experts stated that [Worker's] 1988 condition was solely the result of the natural progression of the condition."

■ We reject Worker's argument. Worker had the burden of persuading the WCJ that he had suffered an aggravation of his condition in the course of his employment with Chevron. *See Baca v. Bueno Foods*, 108 N.M. 98, 102, 766 P.2d 1332, 1336 (Ct.App.1988) (worker has burden of proving that he or she comes within terms of the statute). We must affirm the WCJ if there was a rational basis for the WCJ to reject Worker's proposed finding that his lung condition was aggravated during the course of his employment with Chevron. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990).

■ The record establishes that there was such a rational basis. Worker does not dispute the WCJ's findings that he had been employed as an underground miner for approximately 30 years, that chest x-rays in 1966 or 1967 disclosed early evidence of silicosis, and that he was diagnosed as having Stage I silicosis in 1975. Dr. William Christensen testified that the cause of Worker's disability was silicosis. Worker does not dispute the WCJ's finding that silicosis is a "lung disease resulting from inhalation of silica dust." Dr. Christensen, as well as Dr. Arnolfo Valdivia and Dr. Ann DeHart, all testified that Worker's

condition would have progressed after 1986 even if he no longer worked. Dr. Christensen also testified that exposure to anything other than silica dust would have no long-term effect on Worker's silicosis, the progression of the silicosis, or the developmental course of Worker's lung disease.

Van Smith, the safety engineer for Chevron, testified that Chevron routinely sprayed water to keep dust out of the mine and had a main fan that completely exchanged the air in the mine every four minutes. He testified that he was not aware of anyone else at the Chevron mine who had developed lung, pulmonary, or silicosis problems. Dr. Valdivia also testified that the mine was very well ventilated, with minimal dust, and that he had never seen a case of pneumoconiosis (a general diagnosis that includes silicosis) in a miner who had worked only in the Grants area. Dr. Valdivia concluded that he was not aware of anything connected with Worker's employment with Chevron that caused permanent aggravation to his respiratory system. Dr. Christensen testified that there was insufficient data for him to say whether Worker was sufficiently exposed to silica dust while working for Chevron to aggravate his condition.

On this record it was rational for the WCJ to be unpersuaded that Worker's lung condition was aggravated by his employment with Chevron. The WCJ could therefore properly conclude that Worker was not entitled to benefits under the Workers' Compensation Act. We need not address whether the nature of the alleged injury required that the ODDL be the exclusive source of any benefits to Worker or whether Worker's disability was foreseeable and therefore not the result of an "accidental" injury. *See Rader v. Don J. Cummings Co.*, 109 N.M. 219, 784 P.2d 38 (Ct.App. 1989); *Cisneros v. Molycorp*, 107 N.M. 788, 765 P.2d 761 (Ct.App.1988).

III. APPLICABILITY OF THE SUBSEQUENT INJURY ACT TO COMPENSATION UNDER THE OCCUPATIONAL DISEASE AND DISABILITY ACT

■ Worker next contends that even if he was not entitled to benefits under the

Workers' Compensation Act, he can still obtain recovery from the Fund if he was entitled to benefits under the ODDL. We disagree. We hold that the Subsequent Injury Act does not apply to disabilities compensable under the ODDL.

The Subsequent Injury Act contains no reference to the ODDL. In contrast, the Subsequent Injury Act makes repeated references to the Workers' Compensation Act. Of particular significance is the previously quoted language from Section 52–2–2(C), which speaks of "the provisions embodied in the Subsequent Injury Act, which make a logical and equitable adjustment of employer's liability under the Workers' Compensation Act * * * *" Other provisions in the Subsequent Injury Act that make clear that it applies only to benefits payable under the Workers' Compensation Act are:

The definitions contained in the Workers' Compensation Act, except as specifically provided in the Subsequent Injury Act, shall apply to the Subsequent Injury Act. As used in the Subsequent Injury Act:

. . . .

B. "compensation order" means an order duly authorized by a workers' compensation judge pursuant to the Workers' Compensation Act ordering payments from the subsequent injury fund.

§ 52–2–3.

The superintendent of insurance may authorize payments from the subsequent injury fund for the following purposes, whether or not a compensation order has been entered:

(1) the reimbursement to the employer or its insurance carrier of the fund's portion of benefits payable to an injured worker under the Workers' Compensation Act, as apportioned under the Subsequent Injury Act.

§ 52–2–5(A).

In the event any worker suffers a compensable injury as defined by the Workers' Compensation Act, the certificate [of pre-existing permanent physical impairment] shall have the effect of limiting the employer's liability as between the employer or its insurance carrier and the subsequent injury fund to the disability attributable to the physical impairment arising from the current injury.

§ 52–2–6(C).

No compensation order directing lump sum payments from the subsequent injury fund shall be authorized except as provided in the Workers' Compensation Act.

§ 52–2–7.

The payments prescribed by the Subsequent Injury Act shall be subject to the same limitations in time and in amount as those under the Workers' Compensation Act, including specifically Section 52–1–31 NMSA 1978. A compensation order for compensation benefits payable under the Subsequent Injury Act shall be subject to the same rights of modification thereof as are contained in the Workers' Compensation Act. Appeals under the Subsequent Injury Act may be taken in the manner provided in the Workers' Compensation Act for judicial review of decisions by a workers' compensation judge. All rights of subrogation provided in the Workers' Compensation Act are preserved to the employer or its insurance carrier and are hereby extended to the subsequent injury fund to be exercised by the superintendent of insurance represented by the attorney general of New Mexico or other counsel retained by the superintendent of insurance.

§ 52–2–12.

Most important of all, the statutory provision for liability of the Fund for payment applies only to benefits payable under the Workers' Compensation Act. The statute provides:

**Liability for payment.**

A. Liability for payments for injuries compensable from the subsequent injury fund shall be apportioned between the employer or his insurance carrier and the fund according to the following schedule:

(1) the employer or his insurance carrier shall pay without reimbursement from the fund all compensation benefits for the first eight weeks for the combined

condition of disability or for death provided under the Workers' Compensation Act, and for any period thereafter liability shall be apportioned in the discretion of the superintendent of insurance or by the compensation order; and

(2) all payments of workers' compensation benefits shall be initially paid to the worker or his dependents entitled thereto by the employer or his insurance carrier and the sums paid for which the subsequent injury fund is liable shall be repaid to the employer or his insurance carrier making payments from the fund at the end of each quarter during which payment is made.

B. No employer or insurance carrier shall be entitled to reimbursement from the subsequent injury fund for any workers' compensation benefits paid until and unless he shall have made all contributions required pursuant to Section 52-2-4 NMSA 1978.

§ 52-2-11.

Given this statutory language, we find it impossible to conclude that the Fund is available to employers as a source of reimbursement for obligations paid under the ODDL. *See Ballard v. Southwest Potash Corp.,* 80 N.M. 10, 11, 450 P.2d 448, 449 (Ct.App.1969) (applicability of Subsequent Injury Act depends on a "subsequent disability compensable under our Workmen's Compensation Act").

Worker relies on a statement in 1B Arthur Larson, *Workmen's Compensation Law* Section 41.86 (1991). Larson states that "[i]n about half of the states, the provisions on second injury funds are sufficiently broad to appear to cover preexisting occupational disease," and then names New Mexico as one of those states. *Id.* at 7–715. The point being made by Larson, however, is simply that the pre-existing physical impairment necessary to bring the Subsequent Injury Act into operation may be an impairment caused by occupational disease. Larson does not contend that in New Mexico the Fund is available to reimburse employers who pay benefits under the ODDL.

## IV. CONSTITUTIONAL ARGUMENTS

Worker contends that if the Subsequent Injury Act does not apply to benefits recoverable under the ODDL, then the Subsequent Injury Act is unconstitutional. He focuses on the distinction we drew in *Rader,* 109 N.M. at 225–26, 784 P.2d at 44–45. In that opinion we held that the ODDL applies only when "the disease is peculiar to the worker's occupation and not merely to his workplace." *Id.* at 226, 784 P.2d at 45. The lung disease suffered by claimant in that case had been aggravated by exposure to asbestos dust at work, but such exposure was not peculiar to claimant's occupation. We upheld compensation for claimant's lung disease under the Workmen's Compensation Act.

The essence of Worker's argument here is that it is irrational to distinguish between different circumstances in which an employee is exposed to asbestos or other pollutants on the job and that the distinction requires the parties to enter "into a game of chance where none of the parties know in advance how their situation will be categorized, and what their benefits and liabilities will be," thereby preventing rational assessment of settlement prospects. In other words, as we understand Worker, the difficulty in determining whether one comes under the Workers' Compensation Act or the ODDL requires an employee to engage in guesswork in deciding whether and how to settle a disability claim, and there is no need to put the employee through such a dilemma because the same statutory scheme should apply in either case.

In response, the Fund first points out that Worker's constitutional argument was not presented to the WCJ. The Fund contends that Worker should not be permitted to raise the argument for the first time in this court. This contention has some appeal. The general rule is that issues cannot be raised for the first time in an appellate court. *See* SCRA 1986, 12–216. We recognize the case law holding that the WCJ has no authority to rule a statute unconstitutional. *See Sandia Sav. & Loan Ass'n v. Kleinheim,* 74 N.M. 95, 100, 391

P.2d 324, 327–28 (1964); *Montez v. J & B Radiator,* 108 N.M. 752, 754, 779 P.2d 129, 131 (Ct.App.1989). *But see Southern Pac. Transp. Co. v. Public Util. Comm'n,* 18 Cal.3d 308, 134 Cal.Rptr. 189, 556 P.2d 289 (1976) (en banc); Note, *The Authority of Administrative Agencies to Consider the Constitutionality of Statutes,* 90 Harv. L.Rev. 1682 (1977). Yet, we see advantages in requiring the parties to raise constitutional issues in the proceedings before the WCJ even when the WCJ cannot rule on them. Raising the constitutional issue at the trial level enables the parties to prepare a record on the issue, *see Trujillo v. City of Albuquerque,* 110 N.M. 621, 798 P.2d 571 (1990) (remanding for evidentiary hearing to determine constitutionality of damages cap), and can alert the opposing party to change or expand upon trial strategy to try to moot the issue (here, the Fund might have tried to moot the constitutional issue by persuading the WCJ that Worker was not entitled to benefits under the ODDL). *Montez,* however, held that it was unnecessary to raise before the WCJ a constitutional challenge to a statute, 108 N.M. at 754, 779 P.2d at 131, so we reject the Fund's contention that Worker waived his constitutional argument.

■ The Fund also contends that Worker cannot raise a challenge to the constitutionality of the statute because Worker lacks standing. The Fund notes that Worker complains that the employee is unable to make an assessment of the settlement prospects, but that on this appeal Worker stands in the position of the employer. Nevertheless, Worker's argument is that he personally was injured in this litigation by the irrational distinctions made in the New Mexico statutory scheme. Therefore, we will address the merits of Worker's constitutional argument.

■ As already stated, Worker contends that he has been prejudiced by an irrational distinction between injuries covered by the Workers' Compensation Act and injuries covered by the ODDL. The sole difference between the two statutes pointed out by Worker is that the Subsequent Injury Act applies to cases under the Workers' Com-

pensation Act but does not apply to cases under the ODDL. If there are other material differences between the statutes that affect Worker, he does not mention them. For example, he does not claim that benefits to a disabled worker are greater under one statute than under the other. *Compare* Section 52–1–41(A) (benefits under the Workers' Compensation Act for total disability equal 66⅔ percent of worker's average weekly wage, not to exceed a maximum compensation of 85% of the average weekly wage in the state) *with* Section 52–3–14(B) (same percentage and maximum provided under ODDL). Thus, we can assume that Worker would be entitled to the same benefits whether he comes under the Workers' Compensation Act or the ODDL.

Worker asserts only one type of prejudice arising from the difference between the two statutes—his settlement strategy can be affected by whether the Subsequent Injury Act is available to the employer. He complains of uncertainty in developing a settlement strategy because of the difficulty of determining whether the injury is one under the Workers' Compensation Act or one under the ODDL. Such uncertainty, however, is hardly unusual in litigation. Our cases have set forth a reasonably clear standard for determining whether an injury comes under the Workers' Compensation Act or the ODDL. *See Rader,* 109 N.M. at 225–26, 784 P.2d at 44–45. Occasionally there will be difficulty in applying the law, but such uncertainty is no greater than the uncertainty with respect to the factual issues that often arise, as they did in this case.

Thus, the interest of Worker at stake here (elimination of uncertainty in settlement negotiations) is not a substantial and important interest that requires heightened scrutiny of the legislative rationale for enacting two statutory schemes for employee injuries. *See Trujillo,* 110 N.M. at 625, 798 P.2d at 575; *Richardson v. Carnegie Library Restaurant,* 107 N.M. 688, 698, 763 P.2d 1153, 1163 (1988). We uphold the statutory distinction "so long as there is a plausible policy reason for the classification," *Nordlinger v. Hahn,* — U.S. —,

——, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992), regardless of whether the legislature has actually articulated the policy. *Id.* at ——, 112 S.Ct. at 2333; *see Richardson,* 107 N.M. at 697, 763 P.2d at 1162; Laurence H. Tribe, *American Constitutional Law* § 16–3 (1988).

We see at least one plausible reason for not extending the Subsequent Injury Act to benefits provided under the ODDL. Insofar as the purpose of the Subsequent Injury Act is to encourage the hiring of physically impaired workers, the legislature could well have decided that it does not wish to encourage the employment of impaired workers in occupations that present significant risks of occupational disease. On the contrary, once a worker is impaired by, say, a lung condition, it may be desirable to discourage the worker from engaging in underground mining. *See* § 52–3–49.1 (effective January 1, 1991) (providing that an employer should offer to rehire a worker who has stopped working due to a disablement for which worker receives benefits under the ODDL, subject to certification by a health care provider that the worker is fit to carry out the work "without significant risk of repeating or compounding the disablement"). For example, since Worker was already suffering from silicosis when he applied for work with Chevron, the legislative policy to encourage employers to hire him may not have extended so far as to include encouragement to hire him in an occupation for which silicosis was an occupational disease. Perhaps this purpose could have been implemented more precisely through a statutory scheme that included a subsequent injury act for ODDL benefits. "But this is hardly enough to make the [law] fail rational-basis review, for 'rational distinctions may be made with substantially less than mathematical exactitude.'" *Burlington N.R.R. v. Ford,* —— U.S. ——, ——, 112 S.Ct. 2184, 2187, 119 L.Ed.2d 432 (1992) (quoting *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)).

We therefore reject Worker's constitutional argument.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the Workers' Compensation Judge.

IT IS SO ORDERED.

APODACA and FLORES, JJ., concur.